## Bachman *et al. versus* Fenstermacher.

1. It is the duty of a constable, to whom an execution is delivered to make return of the same to the justice on or before the return day. If he do not do so or show sufficient cause why execution should not issue against him, upon being summoned before the justice, under the Act of March 20th, 1810, judgment must be entered against him for the amount of said execution and costs.

2. The measure of damages under said Act for neglecting to make return of an execution on or before the return day is the amount of the execution and costs; and it matters not that the constable could not, by the greatest diligence, have recovered anything whatever on the execution.

March 10th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK, J., absent.

ERROR to the Court of Common Pleas of *Northampton county :* Of January Term, 1885, No. 308.

Appeal by John A. Fenstermacher, the defendant, from the judgment of a justice of the peace at the suit of Reuben K. Bachman and George W. Bachman, formerly trading as P. S. Bachman & Co., to recover damages from the defendant, under the Act of March 20th, 1810, for neglecting to return an execution delivered to him, as constable, on or before the return day. The plea on the appeal was *nil debet.*

The facts of the case as they appeared on the trial sufficiently appear in the charge of the court, SCHUYLER, P. J., as follows:

This is an action brought by P. S. Bachman & Co. against John A. Fenstermacher, who was at one time one of the constables of this county, for not returning an execution, which had been placed in his hands, on or before the return day thereof.

The action is brought under an Act of Assembly which has been read in your presence a number of times, and which I will read to you again. (See the Act quoted in full in the opinion of the Supreme Court.)

The facts in this case are these: On the 22d of September, 1882, the plaintiffs caused to be issued an execution against a man named Godfrey W. Kessler, and the allegation is that shortly after it was issued it was received by the defendant and that he undertook to serve and execute the same. It is also a fact in this case that after he had accepted the execution and undertaken to execute it, he did not return it on or before the return day—the return day being October 12th, 1882.

[Bachman *v.* Fenstermacher.]

On this state of facts, if there was nothing more in the case, the plaintiffs would be entitled to a verdict at your hands for the amount of the execution together with the costs that were made in the suit before the justice upon which the execution was issued.  [The defendant, however, says, that whilst these things may be true, yet, that the plaintiffs have sustained no injury by reason of the constable not returning the execution in time, and this raises the only question of fact that it will be necessary for you to pass upon.

The burden is upon the defendant to show that the plaintiff has sustained no injury by reason of the constable not returning the execution in time, and the question which I submit to you is whether or not the plaintiff did sustain any injury by reason of the constable not returning the execution in time; If you can find from the evidence that he did sustain injury, then you will return a verdict for the plaintiff for the amount of the injury which the evidence shows that he sustained, the damages, of course, in no case exceeding the amount of the execution and the costs.

If, on the other hand, you find, notwithstanding the constable failed to make the return on or before the return day, that the plaintiffs were not injured by his failure to make the return, then your verdict will be in favor of the defendant.]  (Thirteenth assignment of error.)

What remains for me to say I will say to you in answer to the points which have been submitted.

The defendant submitted, *inter alia*, the following points:

5. If the jury believe that the constable could not, by the greatest diligence, recover anything whatever on the execution, he is not liable for any damages. ,

Answer, affirmed.   (Eighth assignment of error.)

6. The measure of damages in such a case is not always the amount of the execution, but the value of the property subject to levy and sale, when it does not equal in amount the debt.

Answer, affirmed;   (Ninth assignment of error.)

Verdict for the defendant and judgment thereon, whereupon the plaintiff took this writ, assigning for error, *inter alia*, that portion of the general charge included within brackets, and the answer of the court to the defendant's fifth and sixth points.

*O. H. Meyers* (*B. F. Faekenthall* with him), for plaintiffs in error.—The remedy being purely statutory, the common law rule as to the measure of damages does not apply. The common law remedy existed prior to the Act of 1794, which was re-enacted by the Act of 1810, and which gave a special

remedy and relief against constables, to plaintiffs in execu-
tions. The statute, neither in express words, nor by implica-
tion, restricts the plaintiffs to actual damages for injuries
sustained, either compensatory, or vindictive, or both. It
simply gives him either the amount of the original execution,
or nothing, if the constable can show sufficient cause for vio-
lation of his official duty. That this statute is penal in its
character, and the proceedings thereon, in some measure, sum-
mary, is clearly shown by the authorities: Delany *v.* Brendle,
15 S. & R., 77; McCormick *v.* Miller, 3 R. & W., 235; Parch-
ment *v.* Aiken, 3 Watts, 278; Arbingast *v.* Honk, 6 Id., 229;
Hall *v.* Galhanthe, 8 Id., 220; Sherfy *v.* Fisher, 2 Rawle, 148;
Keller *v.* Clark, 6 W. & S., 535; Evans *v.* Boggs, 2 Id., 229;
Daniel *v.* Bass, 4 Wh., 57; Burkholder *v.* Clark, 2 Barr, 51;
Shover *v.* Funk, 5 W. & S., 457. It is not competent for the
constable to show that he could not have made the money on
the execution: McClain *v.* Smith, 4 Clark, 452; Amey *v.* Ken-
nedy, 1 Ash., 160.

The general rule in respect to transgressions of compulsory
statutes is thus stated in Sedgwick on Damages, 504: " The
neglect of a compulsory statute which annexes no penalty to
the transgression, will found an action at common law to those
who have interest, ordaining the defendant either to do what
the statute requires or pay damages." . . . . . " There is another
class of cases where the legislature, following out the idea of
the Aquilian Law, has endeavored to put a stop to all inquiry
in the actual damages by fixing an arbitrary sum as the meas-
ure of relief:" Id., 504.

*Robert L. Cope,* for defendant in error.—"*Prima facie,* the
constable is responsible for the whole amount of the sum
indorsed on the execution: 10 Mass. R., 474. But he may
reduce it by showing that no diligence of his could have col-
lected so much: 1 Hill, 276. If therefore the value of the
property was less than the debt, the plaintiff can only recover
as much as it was worth:" Commonwealth *v.* Contner, 6 Har-
ris, 439; Corson *v.* Hunt & Abrahams, 2 Id., 510; Dorrance's
Adm'rs *v.* Commonwealth, 1 Id., 160; Keller *v.* Clark, 6 W.
& S., 534; Amey *v.* Kennedy, 1 Wash., 160; Dow *v.* Humbert,
1 Otto, 294; Weld *v.* Bartlett, 10 Mass., 473.

Mr. Justice PAXSON delivered the opinion of the court
April 12th, 1886.

This was an action originally before a justice of the peace,
and brought into the court below by an appeal, in which the
plaintiffs sought to recover from the defendant, who was at
one time one of the constables of Northampton county, dam-

.ages for not returning on or before the return day an exécution which had been placed in his hands. .

: The action was based on the 12th section of the Act of 20th March, 1810, Purdon, 267, pl. 19 ; 5 Sm. L., 137, which provides that : "On the delivery of an execution to any constable an account shall be stated in the docket of the justice, and also on the back of the execution, of the debt, interest and costs, from which the said constable shall not be discharged, but by producing to the justice on or before the return day of the execution, the receipt of the plaintiffs, or such other return as may be sufficient in law. And in case of a false return, or in case he does not produce the plaintiff's receipt on the return day, or make such other return as may be deemed sufficient by the justice, he shall issue a summons directed for service to a constable or to some other fit person who shall consent to serve the same, and having so consented by accepting of such process, shall be bound to execute the same under a penalty of $20, to be recovered as other fines are recoverable by the Act ; but should not a constable or other fit person conveniently be found to serve the process as aforesaid, the justice shall direct it to a supervisor of the highways of the township, ward or district, where such constable resides, whose duty it shall be to serve the same under the penalty aforesaid, commanding the constable to appear before him on such day as shall be mentioned in the said summons, not exceeding eight days from the date thereof, and then and there show cause why an execution should not issue against him for the amount of the above first mentioned execution ; and if the said constable either neglects to appear on the day mentioned in such summons, or does not show sufficient cause why the execution should not issue against him, then the justice shall enter judgment against such constable for the amount of the first above mentioned execution, together with costs, on which judgment there shall be no stay of execution ; and upon application of the plaintiff or his agent, the justice shall issue an execution against the constable for the amount of such judgment, which execution may be directed to any constable of the county or any fit person accepting thereof, or to a supervisor as aforesaid, whose duty it shall be to execute the same."

I have given this section of this Act entire, as it is to be feared that many constables are either ignorant of its provisions, or disregard it in practice.

A number of assignments of error have been filed to the rulings of the court below. The error into which the court fell will fully appear in the Eighth Assignment. The defendant in his fifth point asked the court to instruct the jury that : "If the jury believe that the constable could not by the great-

[Bachman v. Fenstermacher.]

.est diligence recover anything whatever on the execution, he is not liable for any damages;" which point was affirmed. And in answer to the defendant's sixth point (see ninth assignment), the court instructed the jury that "the measure. of damages in such a case is not always the amount of the execution, but the value of the property subject to levy and sale, when it does not equal in amount the debt."

Had the action been at the common law for a failure to return the execution, the measure of damages laid down by the court would have been accurate. But the Act in question is not merely declaratory of the common law; it goes further and fixes a penalty for a failure to perform this duty; and the penalty is the amount of the execution and costs; neither more, neither less. It says, as above stated, that if the constable "does not show sufficient cause why the execution should not issue against him, then the justice shall enter judgment against such constable for the amount of the above mentioned execution, together with costs." This is explicit; it does not say for such actual damages as the party may have sustained, but for the full amount of the execution and costs. In a common law action punitive damages may be recovered where the circumstances justify it, but there can be no punitive damages under the Act of 1810; the debt and costs is the maximum, as it is also the minimum. The constable must be fixed for the whole amount of the execution or discharged altogether; there is no middle ground.

The most satisfactory discussion of this Act will be found in Amey v. Kennedy, 1 Ashmead, 160, where the late Judge KING, who was admittedly one of the ablest jurists of this state, lays down the principle broadly that "A constable neglecting to make return of his execution to the justice, on or before the return day thereof, is absolutely fixed for the debt and costs." The same principle is recognized in a number of the decisions of this court. Parchment v. Aiken, 3 Watts, 278; Arbingast v. Hook, 6 Watts, 229; Hall v. Galbraith, 8 Id., 220; Burkholder v. Keller, 2 Penn. St. Rep., 51; Shover v. Funk, 5 W. & S., 457. In the last case it was said by the court: "It will be difficult to keep constables within the line of their duty if they are permitted. to. escape from the consequences of their neglect on such easy terms. The path of duty is plain, and if they do not choose to follow it, on them be the consequences. Something is due to the rights of creditors as well as debtors; nay, it is to the advantage of all to respect the rights of all."

The foundation of the action is the wilful neglect of the constable. He can avoid the penalty by performing his duty to return the writ. If the goods levied upon are claimed by

[Bachman *v.* Fenstermacher.]

some one other than the defendant in the execution, and plain-
tiff refuses or neglects to indemnify him, he can return the
writ, and state such fact, or any other fact which prevents his
proceeding with it.

Keller *v.* Clark, 6 W. & S., 534, and Corson *v.* Hunt,
14 Penn. St. Rep., 510, were cited as in conflict with the fore-
going views. We do not so understand those cases. In the
former, the court below laid down the inflexible rule that if
the constable fails to return the writ within twenty days, he
is in all cases fixed for the debt. This court reversed the
court below, and held that " the mere omission of a constable
to return his execution within twenty days, does not fix him
for the amount of the debt if he has sufficient cause for the
delay." So we say now. The delay does not fix him for the
debt if he can show sufficient cause for such delay, and it
was shown in that case. In Corsin *v.* Hunt the constable had
made a false return. For such false return an action would
undoubtedly lie under the Act of 1810, and it was stated, in
the history of that case, that the writ was so brought. But
the declaration contained three counts, the last of which was
for a breach of a common law duty, and was not, and could
not have been, sustained under the Act of 1810. I am clear
that the remarks of Judge ROGERS upon the measure of dam-
ages were intended for the latter count. There could have
been no recovery on the count for not returning the writ, for
there was a return, although a false one. This view is the
more reasonable, as all of Justice ROGERS' utterances upon this
point, upon previous occasions, were the other way.

The constable may excuse his failure to make return when
he comes before the justice. But it is his failure to make the
*return*, not his inability to make the money in the execution,
which is the subject of inquiry. Hence it is entirely irrele-
vant to show that the defendant had no goods upon which to
levy. If such be the fact, he can so return. But be the de-
fendant never so impecunious, it does not condone the neglect
of the constable in not returning his writ. The plain object
of the Act of 1810 was to compel the performance of this duty.

The judgment is reversed, and a *venire facias de
novo* awarded.